IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Bankruptcy Case No. 15-21782-JAD |
| RONALD OLSON, | |
| Debtor. | Chapter 7 |
| DENISE OLSON, | |
| Plaintiff, | Adversary No. 15-02166-JAD |
| v. | Doc. No. |
| RONALD OLSON, | |
| Defendant. | |

### MEMORANDUM OPINION

This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052.

The Plaintiff, Denise Olson, is the Debtor's ex-spouse. By this action, the Plaintiff filed an Adversary Proceeding seeking a determination that obligations contained in "Final Separation Agreement and Property Settlement" (**"Agreement"**) between Mrs. Olson and the Debtor are non-dischargeable. Specifically, the issues before the Court are: (a) whether an obligation of the Debtor under the Agreement to pay 49% of the parties' debt to BB&T is non-dischargeable under 11 U.S.C. § 523(a)(5) or § 523(a)(15) (Count I); and (b)

whether all other obligations of the Debtor under the Agreement are non-dischargeable under 11 U.S.C. § 523(a)(15) (Count III).[1]

This Court has jurisdiction over this Adversary Proceeding as a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(i) and 1334. For the reasons set forth below, the Court finds that the Adversary Proceeding has merit. As such the Court shall enter a judgment finding that the Debtor's agreement to pay 49% of the BB&T Obligation to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(15). The Court further concludes that the relief requested in Count III shall be denied without prejudice.

## I.

This matter was brought before the Court on a case stated basis. On July 21, 2016, the parties filed their Joint Stipulation (the "**Stipulation**"), which Stipulation includes the following agreed upon facts:

> 4. Green Goods Distribution, LLC signed a Promissory Note with BB&T on August 25th, 2010 for the amount of one hundred thousand dollars ($100,000). The Corporation is and was primarily liable for the full amount of the loan.
>
> 5. Denise Olson and Ronald Olson each signed a guaranty of the debt to BB&T in 2010.[2]
>
> \*\*\*
>
> 10. ***Prior to entering into the Final Separation Agreement and Property Settlement Agreement, Denise Olson was the***

---

[1] This Court previously entered an Order granting the relief requested in Count II of the Complaint, which found certain support obligations to be non-dischargeable. *Order of Court*, dated January 25, 2016, Adv. Dkt. No. 23, as modified by Order dated September 2, 2016, Adv. Dkt. No. 50.

[2] As used in this Memorandum Opinion, such obligation is referred to as the "**BB&T Obligation**."

2

***sole Member and 100% owner of GGD*** [Green Goods Distribution, LLC]. (emphasis added).

\*\*\*

12. Paragraph II [A](6)(e) of Final Separation Agreement and Property Settlement Agreement incorporated into the Divorce Judgment, provided that Debtor "('Husband') and Denise Olson ('Wife') shall continue to operate Green Goods Distribution, LLC ***with Wife maintaining a 51% interest and the Husband a 49% interest. As such, each party shall be personally liable, in proportion to his interest or her interest in said company, for any and all debts arising therefrom and shall be entitled to any net profits generated also in proportion to his or her respective interest.***" (emphasis added).

\*\*\*

17. As of July 20, 2016, Denise Olson personally contributed a total of $20,389.31 [on account of the BB&T Obligation] which, times 49% equals $9,990.7619, which is the amount of Debtor's share.

18. As of July 20, 2016, the balance of BB&T Bank is: $47,045.86. . . .

## II.

Paragraph II.A(6)(e) of the Agreement (recited above in "¶12") is listed under Section II.A of the Agreement, which is entitled: "II. PROVISIONS FOR PROPERTY SETTLEMENT: A. PROPERTY DIVISION AND SETTLEMENT." While the subtitles of an agreement are not conclusive evidence of the intent and legal significance of the content contained thereunder, I find the BB&T Obligation not to be a "domestic support obligation" within the meaning of § 523(a)(5). See, In re Druckenmiller, No. 1:09-BK-03903MDF, 2010 WL 1257353, at *2 (Bankr. M.D. Pa. Mar. 26, 2010)(citing In re Gianakas, 917 F.2d 759, 762 (3d Cir. 1990). As such, the primary issue before the Court is

whether the obligations contained therein are non-dischargeable pursuant to 11 U.S.C. § 523(a)(15).

Section 523(a)(15) of the Bankruptcy Code excepts from discharge debts owed to "a spouse ... that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement..." See 11 U.S.C. § 523(a)(15). The controversy before the Court involves a narrow application of this statute. Namely, the issue is whether the Plaintiff's claims against the Debtor for failure to contribute payment of 49% of the BB&T Obligation is non-dischargeable because it is a debt "incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement."

The Debtor disputes that the BB&T Obligation "was incurred by the debtor in the course of a divorce. . . ." In this regard, the Debtor cites to In re Proyect, 503 B.R. 765, 775 (Bankr. N.D. Ga. 2013), and argues that because each party was a surety for the BB&T Obligation before entry into the Agreement, any obligation of the parties to pay the BB&T Obligation cannot be a debt that is "incurred by the debtor during the course of a divorce or separation or in connection with a separation agreement."

This Court finds that the Debtor's interpretation and/or application of Proyect is overly simplistic and misses the mark. It is true that Proyect was decided in the context of contribution and/or indemnity claims between two co-debtors when one party had the right of contribution under applicable state law against the other for payments made to a common creditor in excess of

4

their respective proportionate share. The crux of the holding in Proyect however is:

> ... the mere restatement of an existing obligation between the parties in a settlement agreement does not necessarily create new enforcement rights—and thus a new debt—that did not already exist. The crucial question is: what were the relative rights and obligations of the debtor and the former spouse before and after the divorce?"

In re Proyect, 503 B.R. at 775.

Through this lens, the Court concludes that the Plaintiff's claims against the Debtor for non-payment of 49% of the BB&T Obligation is, in fact, a debt incurred or created by the Agreement.

Prior to or absent the provisions of the Agreement, it is undisputed that either party would have had the potential right of contribution against the other under applicable North Carolina statutory law with respect to payments to a common creditor. Specifically, North Carolina law provides:

> Where there are two or more sureties for the performance of a contract, and one or more of them may have been compelled to perform and satisfy the same, or any part thereof, such surety may have and maintain an action against every other surety for a just and ratable proportion of the same which may have been paid as aforesaid, whether of principal, interest or cost.

N.C. Gen. Stat. Ann. § 26-5.

Under applicable North Carolina case law, and in the absence of a contractual modification, the calculation of the contribution is ratable, but may be adjusted based on equitable principles. As one North Carolina Court observed:

5

> The doctrine [of contribution] is "not founded on, nor does it arise from, contract or tort, but is founded on principles of equity, principles of natural justice." 18 C.J.S. Contribution § 3, at 5 (1990). It is a prerequisite to a claim for contribution that the party seeking contribution "satisf[y], by payment or otherwise, more than his just proportion of the common obligation or liability." 18 Am.Jur.2d Contribution § 9, at 16 (1985); see Nebel, 223 N.C. at 684-85, 28 S.E.2d at 213; Sacks, 375 S.E.2d at 721; Va.Code Ann. § 8.01-249(5) (Michie 1992) (cause of action for contribution accrues "when the contributee ... has paid or discharged the obligation").

Irvin v. Egerton, 122 N.C. App. 499, 501, 470 S.E.2d 336, 337 (1996); accord, Coll. Rd. Animal Hosp., PLLC v. Cottrell, 236 N.C. App. 259, 263, 763 S.E.2d 319, 322 (2014) ("Contribution is generally defined as 'the right of one who has discharged a common liability or burden to recover of another also liable [the fractional] portion which he ought to pay or bear.' Irvin v. Egerton, 122 N.C.App. 499, 501, 470 S.E.2d 336, 337 (1996).").

Given that North Carolina law affords a surety the right of contribution against a co-obligor, and given the fact that North Carolina law permits equitable adjustments to a contribution claim, it is patently obvious that the amount of contribution can vary from case to case. That variance, depending on the equities of the case, can range from 0% of the common debt paid to a contribution claim of 100% of the joint obligation paid.

Here, Denise Olson was the sole member of GGD before the Agreement. This fact suggests that prior to the entry into the Agreement the Debtor could pursue a significant equitable adjustment to any contribution claim made against him by the Plaintiff on account of any BB&T Obligation paid by her.

However, upon execution of the Agreement, Plaintiff conveyed 49% of the membership in GGD to the Debtor. Similarly, that same paragraph of the Agreement provided for a division of responsibility for GGD's obligations between the parties. In fact, the Agreement divided those - 49% to the Debtor and 51% to the Plaintiff - regardless of North Carolina's contribution statute and equitable adjustments to the same. Hence the "relative rights and obligations of the debtor and former spouse before and after the divorce" were very different. These facts support the conclusion that the debt due from the Debtor to the Plaintiff with respect to the BB&T Obligation is one incurred under the Agreement and is non-dischargeable pursuant to 11 U.S.C. §523(a)(15). See In Shreffler, 319 B.R. 113, 116-17 (Bankr. W.D. Pa. 2004)(where marital settlement agreement allocated joint liability on credit card, obligations between the parties in the agreement was a debt "incurred" during the course of a divorce)(citing In re Mannix, 303 B.R. 587, 596 (Bankr. M.D. Pa. 2003).

Based on the preceding analysis, the Court finds that the Debtor's obligation for 49% of the BB&T Obligation, under Paragraph II.A(6)(e) of the Agreement, to be non-dischargeable under § 523(a)(15) of the Bankruptcy Code.

Inasmuch as the parties agree that as of July 20, 2016 Denise Olson personally contributed a total of $20,389.31 towards the BB&T Obligation, forty-nine percent (49%) of this sum equals $9,990.7619, which is the amount

of Debtor's share that is presently due Denise Olson from the Debtor. This debt due from the Debtor to Denise Olson is non-dischargeable. Furthermore, the Debtor is not discharged from his obligation to pay forty-nine percent (49%) of the remaining balance of the BB&T Obligation, which as of July 20, 2016 was $47,045.86. Thus, the Debtor's non-dischargeable share is $23,052.47, excluding interest which may be payable and is non-dischargeable as well. See Bruning v. U.S., 376 U.S. 358 (1964)(interest on non-dischargeable claim is permitted to accrue and is non-dischargeable).

### III.

In Count III of the Complaint, the Plaintiff broadly asks for a generic ruling: "To the extent that the Divorce Judgment and Separation Agreement address other obligations of the Debtor to Denise Olson, those obligations are not subject to the discharge in this proceeding pursuant to 11 U.S.C. §523(a)(15)." Complaint at ¶27. In effect, the Plaintiff is asking for an advisory opinion because, except for the BB&T Obligation, she does not identify any specific debt to be non-dischargeable based § 523(a)(15). The Court is unwilling to presently grant such relief under these circumstances. See, e.g., In re Grigg, Ch. 7 Case No. 11-71206-JAD, Adv. No. 12-7008-JAD, Dkt. No. 270 at 19 (Bankr. W.D. Pa. 2013)("[C]ounsel for Mr. Grigg merely makes general claims and 'kitchen sink' request for relief."); accord, Regency Fin. Co. v. Trichilo (In re Trichilo), 540 B.R. 547, 551 (Bankr. M.D. Pa. 2015) ("[A] bankruptcy judge should not render an advisory opinion. Federal courts have

no jurisdiction to render advisory opinions. They cannot give opinions advising what the law would be upon a hypothetical set of facts.").

It should be noted that Fed.R.Bankr.P. 4007(b) provides that a "complaint [to determine dischargeability of a debt] other than under §523(c) may be filed at any time. A case may be reopened without payment of an additional filing fee for the purpose of filing a complaint to obtain a determination under this rule."

In light of this Bankruptcy Rule, the Court denies relief requested as to Count III, without prejudice to refiling a complaint to seek a determination as to nondischargeability of a specific obligation under section 523(a)(15) of the Bankruptcy Code, if such obligation was incurred and remains unpaid.

An appropriate order shall be entered in accordance with this Opinion.

Dated: September 29, 2016

_____ 9-29-2016
JEFFERY A. DELLER
Chief U.S. Bankruptcy Judge

Cc: All counsel of record

FILED
9/29/16 2:15 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA